IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LEONEL ALBERTO GARZA,

    Petitioner,

    v.                                            CASE NO. 18-3226-JWL

N.C. ENGLISH, Warden,
USP-Leavenworth,

    Respondent.

## MEMORANDUM AND ORDER

This matter is a petition for writ of habeas corpus filed under 28 U.S.C. § 2241. Petitioner, a prisoner in federal custody at USP-Leavenworth ("USPL"), proceeds *pro se*. Petitioner challenges prison disciplinary proceedings at USPL that resulted in the loss of good conduct time ("GCT"). The Court finds that Petitioner does not allege facts establishing a federal constitutional violation and denies relief.

## I. Background

Petitioner is incarcerated with the Federal Bureau of Prisons ("BOP") at USPL. Petitioner is currently serving a sentence imposed in the United States District Court for the Southern District of Texas, for possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), as well as 18 U.S.C. § 2. (Doc. 6–1, at 17.) Petitioner has a projected release date of December 30, 2023, via good conduct time release. *Id.* at 16. Petitioner's disciplinary proceedings at USPL for violating Code 110, refusing to provide a urine sample, resulted in sanctions which included Petitioner's loss of 41 days of GCT. Petitioner alleges in his Petition that the disciplinary proceedings violated his due process rights and failed to comply with Program Statement 6060.08, *Urine Surveillance and Narcotic Identification*

("PS 6060.08"). Petitioner asks the Court to vacate the order of the Discipline Hearing Officer ("DHO"), expunge his incident report, and restore all of his GCT.

## II. Facts

On November 13, 2017, Petitioner was called to the Special Investigations ("SIS") department. Petitioner arrived at the SIS office at 5:00 p.m., and was notified that he was to produce a sample for a random Urinalysis Assessment ("UA"). Petitioner was provided with an eight-ounce cup of water, and a two-hour time frame to provide a urine sample, pursuant to PS 6060.08.

USPL utilizes urine sample cups and testing kits entitled Pharmatech QuickScreen Onestep OnSite Test Cup. (Declaration of J. Herbig, Special Investigative Support Technician, Doc. 6–2, at 3.) These cups have a specific fill line, which goes to the equivalent of two (2) ounces, and a temperature gauge. *Id*. at 3, 9. In order for the test kit to be done accurately and in accordance with manufacture guidelines, the urine sample must be to the minimum line indicated on the outside of the cup (two ounces), with the temperature reading between 90–100 degrees Fahrenheit. *Id*. at 3, 16. If these requirements are not met, it may be necessary to discard a partial sample. *Id*. at 4.

At the conclusion of the two-hour time frame—7:00 p.m.—Petitioner had yet to provide a sample as required and stated several times "I can't go." (Declaration of R. Bryant, DHO, Doc. 6–1, at 34.) SIS staff contacted the medical department to ensure that there were no medical conditions that existed that would preclude the inmate from providing the sample within the two-hour time requirement, and they advised that no medical conditions existed. *Id*. SIS staff notified the Operations Lieutenant and wrote Incident Report No. 3055886 ("IR") for refusing to provide a urine sample in violation of Code 110. *Id*. The IR was delivered to

Petitioner at 7:39 p.m. on that same date. *Id*. The Lieutenant investigated the IR, noting that Petitioner "did not have a statement to make" and concluded that Code 110 was "appropriate and warranted." *Id*. at 53. The IR was forwarded to the Unit Discipline Committee ("UDC") for further disposition and Petitioner was placed in the SHU. *Id*. Petitioner had an opportunity to appear before the UDC on November 14, 2017. *Id*. at 34. Petitioner appeared and stated, "I take a lot of meds and I was dehydrated and could not pee." *Id*. The UDC referred the matter to a DHO. *Id*.

On November 14, 2017, Petitioner was given a Notice of Discipline Hearing before the DHO and a copy of the Inmate Rights at Discipline Hearing. *Id*. at 55, 57. Included among these rights was the opportunity to have a staff representative assist with the Discipline Hearing, the right to present documentary evidence on Petitioner's behalf, and the right to present a statement to the DHO or remain silent. *Id*. Petitioner signed the Notice of Discipline Hearing and the Inmate Rights at Discipline Hearing Form, noting that he did not wish to call any witnesses, but that he wished to have a staff representative to assist him during the disciplinary process. Petitioner requested the assistance of a Warden's Appointed staff representative. *Id*. at 55.

A hearing was held before the DHO on December 13, thirty days after Petitioner received his IR from staff. The DHO was a certified DHO, an impartial hearing officer that was not personally involved with the incident, the UDC hearing, or any other part of the initial disciplinary process. *Id*. at 14. The DHO reviewed Petitioner's due process rights with him at the hearing, and noted that he had requested a staff representative, but waived his staff representative request prior to the hearing. *Id*. at 9, 59–60. Petitioner indicated he understood his due process rights and was prepared to proceed with his disciplinary hearing. *Id*. at 9, 60.

Petitioner appeared at the disciplinary hearing and presented a verbal statement to the DHO. Petitioner denied the charge and stated "[w]hen I take my meds it causes me to urinate. I only filled the cup half way and he threw it out. He said is wasn't enough." *Id*. at 59. Although Petitioner did not request any witnesses, he asked the DHO to contact the investigative lieutenant to verify that he takes medications. *Id*. at 60. The DHO contacted the investigative lieutenant who stated "[h]e said he takes 22 pills" and "[h]e was upset because he couldn't provide." *Id*. Petitioner did not present any documentary evidence. *Id*.

In making her decision, the DHO considered Petitioner's verbal statements during the UDC hearing, and at the DHO hearing. *Id*. The DHO considered Petitioner's lack of a formal statement to the investigating lieutenant, and considered that he stated to the lieutenant that he takes multiple medications and was upset because he couldn't provide. *Id*. The DHO considered the IR, which indicated Petitioner was brought to the SIS department to provide a urine sample, and failed to provide one within a reasonable period of time (two hours). The DHO also considered Petitioner's statement and/or argument that he provided half of the cup of the sample which was thrown out, which she found was contradicted in Section 11 of the IR. The DHO considered the chain of custody form utilized by the SIS department to indicate Petitioner was notified at 5:00 p.m. about the random UA. *Id*. at 49. The DHO also considered the November 13, 2017 email sent at 7:15 p.m. from the Health Services Department which indicated there was no medical reason for why Petitioner could not provide a urine sample within the allotted time. *Id*. at 60. The email, provided by an NR-Paramedic, provides that:

> Inmate GARZA, LEONEL 84364-379 does not have any medical diagnosis that would exclude him from supplying a UA in the normal time allotted. He is seen regularly in the clinic for chronic care conditions and is compliant with his medications. He was last evaluated on 10/05/2017, and he had no complaints of dysuria (difficult or painful urination) at that time.

*Id*. at 51.

The DHO found that Petitioner committed the Code 110 violation based on the greater weight of the evidence. *Id*. In making her determination, the DHO placed greater weight on the IR written by the SIS officer, the Chain of Custody form, the email from the Health Services Department, Petitioner's statements, and his lack of a defense. *Id*. at 60. The DHO also considered that "during the Lieutenant's investigation [Petitioner] elected not to make a statement." *Id*. The DHO believed that if Petitioner had not committed the prohibited act Petitioner "would have made a statement and presented a defense against the charge throughout the entire discipline process." *Id*.

The DHO sanctioned Petitioner to disallowance of forty-one (41) days of GCT, ninety (90) days of loss of email privileges, and a ninety-nine ($99.00) dollar monetary fine. *Id*. The disciplinary sanctions imposed were consistent with those allowed by policy, and were imposed in an effort to deter this type of misconduct in the future. *Id*. at 13. Petitioner was advised of his ability to appeal through the administrative remedy process within twenty (20) days of the receipt of the report. *Id*. at 61. A written report was subsequently generated and signed by the DHO on December 14, 2017. A copy of the report was delivered to Petitioner on December 20, 2017. *Id*.

### III. Discussion

#### 1. Exhaustion

Generally, a federal prisoner must exhaust available administrative remedies before commencing a habeas corpus petition under 28 U.S.C. § 2241. *Williams v. O'Brien*, 792 F.2d 986, 987 (10th Cir. 1986) (per curiam). The BOP's four-part administrative remedy program is

codified at 28 C.F.R. § 542. Respondent acknowledges that Petitioner has exhausted his administrative remedies with respect to his December 2017 discipline. (Doc. 6, at 3, n. 1.)

**2. Standard of Review**

To obtain habeas corpus relief, an inmate must demonstrate that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S. C. § 2241(c)(3). A federal prisoner has a constitutionally protected liberty interest in his earned GCT. *See Brown v. Smith*, 828 F.2d 1493, 1494 (10th Cir. 1987). Therefore, Petitioner was entitled to due process at his disciplinary hearing that resulted in the loss of GCT. *Howard v. Bureau of Prisons*, 487 F.3d 808, 811 (10th Cir. 2007). However, because prison disciplinary proceedings "take place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so," the "full panoply of rights due a defendant in [criminal] proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556, 561 (1974); *see also Abdulhaseeb v. Ward*, 173 F. App'x 658, 661 (10th Cir. 2006).

In *Wolff*, the Supreme Court held that in order to satisfy due process in a prison disciplinary proceeding, the inmate must receive: (1) "advance written notice of the claimed violation" no less than 24 hours prior to the hearing; (2) an opportunity "to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals;" and (3) a "written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action." *Wolff*, 418 U.S. at 563–66 (citations omitted); *see also Abdulhaseeb*, 173 F. App'x at 661 (citing *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985)); *Smith v. Maschner*, 899 F.2d 940, 946 (10th Cir. 1990). Additionally, there must be some evidence to support the decision and the

decisionmaker must be impartial. *Gwinn v. Awmiller*, 354 F.3d 1211, 1219 (10th Cir. 2004) (citing *Wolff*, 418 U.S. at 592) (Marshall, J., concurring)).

### 3. Procedures

Petitioner argues that his due process rights were violated when he was not given the opportunity to finish filling up the UA cup after the two-hour time frame expired. Petitioner alleges that he never refused to provide a urine sample, nor did he express such to the BOP staff member. Petitioner states that he provided half of a cup, but the staff member refused to accept it, discarded it, and would not permit Petitioner to be placed in a "dry room." Petitioner claims the procedures set out in PS 6060.08 were not offered to him and he was quickly taken to the SHU without the opportunity to complete filling the UA cup.

The Court finds that Petitioner was afforded all the due process protections mandated by *Wolff v. McDonnell*. Petitioner was afforded all three procedural protections mandated by *Wolff*. He was given advance written notice of the charge by delivery of the IR more than 24 hours prior to the DHO hearing. The IR was delivered to Petitioner on November 13, 2017, and his DHO hearing was held on December 13, 2017. Petitioner was advised of his procedural rights before the DHO hearing and given the opportunity to present witnesses and documentary evidence in his defense. Petitioner personally appeared at the hearing and provided a verbal statement. Petitioner was provided a copy of the DHO's written statement, which sets forth the evidence relied upon and the reasons for the disciplinary action and sanctions. The DHO is a certified DHO, an impartial hearing officer that was not personally involved with the incident, the UDC hearing, or any other part of the initial disciplinary process.

Petitioner alleges that BOP staff's failure to follow their own policy statement denied him due process. Petitioner argues that BOP PS 6060.08 was violated because all of the procedures

were not offered to Petitioner. PS 6060.08 provides in part:

> Staff of the same sex as the inmate tested shall directly supervise the giving of the urine sample. If an inmate is unwilling to provide a urine sample within two hours of a request for it, staff must file an incident report. No waiting period or extra time need be allowed for an inmate who directly and specifically refuses to provide a urine sample. To eliminate the possibility of diluted or adulterated samples, staff shall keep the inmate under direct visual supervision during the two-hour period, or until a complete sample is furnished. To assist the inmate in giving the sample, staff shall offer the inmate eight ounces of water at the beginning of the two-hour time period. An inmate is presumed to be unwilling if the inmate fails to provide a urine sample within the allotted time period. An inmate may rebut this presumption during the disciplinary process.
>
> Ordinarily, an inmate is expected to provide a urine sample within two hours of the request, but the Captain (or Lieutenant) may extend the time if warranted by specific situations (for example, the inmate has a documented medical or psychological problem, is dehydrated, etc.).
>
> Staff may consider supervising indirectly an inmate who claims to be willing but unable to provide a urine sample under direct visual supervision. For example, this might be accomplished by allowing the inmate to provide the sample in a secure, dry room after a thorough search has been made of both the inmate and the room.
>
> A urine sample is considered to be approximately a full specimen bottle. Refer to Standard Procedures for Collecting Urine Surveillance Samples (Attachment A).

PS 6060.08, ¶ 9(a). Attachment A to PS 6060.08 further provides that "[o]rdinarily, to be submitted for testing, bottles will be full (i.e., 60cc or 2 oz.)." *Id.* at Attachment A, ¶ 5.

Petitioner has failed to show a due process violation. "[P]rison regulations are meant to guide correctional officials, not to confer rights on inmates." *Farrakhan-Muhammad v. Oliver*, 677 F. App'x 478, 2017 WL 460982, at *1 (10th Cir. Feb. 3, 2017) (unpublished) (citing *Sandin v. Conner*, 515 U.S. 472, 481–82 (1995)); *Cooper v. Jones*, 372 F. App'x 870, 872 (10th Cir. 2010) (unpublished) ("The process due here is measured by the Due Process Clause of the

United States Constitution, not the internal policies of the prison."). Therefore, a failure to strictly follow administrative regulations "does not equate to a constitutional violation." *Hovater v. Robinson*, 1 F.3d 1063, 1068 n. 4 (10th Cir. 1993) (citing *Davis v. Scherer*, 486 U.S. 183, 194 (1984)). Furthermore, the language in PS 6060.08 is permissive, not mandatory. It provides that the Captain or Lieutenant *may* extend the time, and that staff *may* consider indirectly supervising an inmate that is willing but unable to provide a sample.

In *Ussery v. Mosley*, the petitioner argued "that he was denied due process in that the urine surveillance policy of the Bureau of Prisons does not allow destruction of partial samples." *Ussery v. Mosley*, No. 3:14CV605 DPJ–FKB, 2015 WL 5313568, at *2 (S.D. Miss. Sept. 11, 2015) (adopting report and recommendation). In dismissing the petition, the court noted that PS 6060.08 "makes no mention whatsoever of destruction of partial samples" and held that "[i]n any event, a prison's failure to follow its own procedural regulations does not necessarily violate due process." *Id.* at *3 (citation omitted); *see also Julick v. Snyder-Norris*, No. 16–6652, 2017 WL 5485453, at *2 (6th Cir. March 1, 2017) ("To the extent that Julick argues that the BOP was capable of providing a medical accommodation under its existing practices, he fails to state an actionable habeas claim. An agency's failure to adhere to its own policies or guidelines does not constitute a violation of due process."); *Sawyer v. Hollingsworth*, No. 04–4689 MJD/AJB, 2005 WL 1325030, at *3 (D. Minn. May 13, 2005) (where petitioner requested alternative blood testing or dry celling, court found that there is no requirement that those options be provided under PS 6060.08 or any other identified policy statement and "the failure to make testing accommodations does not carry significant due process implications in light of the exigencies existing in the prison environment").

Petitioner also argues that because he was taken to the SHU after the incident, he was not

permitted to go out and obtain additional evidence or witnesses to present at his disciplinary hearing. Petitioner does not dispute that he was advised of his rights at the disciplinary hearing, including his right to present evidence and to have a staff representative assist him. He waived his right to a staff representative, who could have looked into the issue of his medications. Petitioner also waived his right to call witnesses, and did not seek a continuance of his hearing before the DHO. Petitioner has not shown any violation of his right to present evidence under *Wolff*. *See Garcia-Cortez v. Sanders*, No. SACV 11-1554-CJC (MAN), 2013 WL 2417973 at *8 (C.D. Cal. May 31, 2013) (where medical authorization was not mentioned in incident report, which petitioner had a month before the hearing, he should have known there would be no evidence of it at the disciplinary hearing unless he obtained and presented it).

    4. **Some Evidence**

The Court finds that there was "some evidence" to support the DHO's decision. Where the due process requirements of *Wolff* are met, as is the case here, the decision of the DHO will be upheld if there is "some evidence" to support the decision. *Hill*, 472 U.S. at 455. "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." *Terry v. Jones*, 259 F. App'x 85, 86 (10th Cir. 2007), *cert. denied*, 554 U.S. 924 (2008) (quoting *Hill*, 472 U.S. at 456). A decision to revoke good time credits would only violate due process if the record is "devoid of evidence, providing no support for a disciplinary board's decision." *Id.* (citing *Hill*, 472 U.S. at 457). "The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board." *Hill*, 472 U.S. at 457.

Petitioner argues that he did not claim "that he had a medical condition that would preclude him from providing a urine sample." (Doc. 7, at 2.) Rather, he argues that the

10

medication he was taking caused him to be dehydrated and he could not urinate and needed more time and water to provide the urine sample. Petitioner argues that the paramedic providing the email regarding his medical condition at the time of the incident was not asked about the side effects of the medication and whether or not it would prevent him from providing a urine sample.

Petitioner presented a nurse's note and an inmate's affidavit during his administrative remedy appeals. This additional evidence was not presented to the DHO at the hearing.[1] The affidavit is from another inmate, who declares that he had first-hand knowledge that Petitioner provided "a half a cup of urine for testing" that was discarded by the SIS officer who stated "it was not enough." (Doc. 6–1, at 74.) Petitioner did not request this inmate to appear as a witness or present the affidavit as documentary evidence at the disciplinary hearing.

The note is dated January 4, 2017, from Nancy Brader, MS, FNP-BC, stating that:

> Inmate Garza (84364-379) is currently being treated for Hypertensive Heart Disease with Heart Failure with diuretics. These medications increase the excretion of water from the body. Mr. Garza is prescribed two different diuretics to maintain appropriate fluid balance, Furosemide and Hydrochlorothiazide. These medications increase urination at onset – approximately an hour after ingestion, and frequently cause mild dehydration if fluid is not adequately replaced. These mediations do not prevent urination but certainly effect the amount of urine the body produces.
>
> Please see attached Medication Summary and Clinical Drug Information sheets. Please contact me if I can be of further assistance.

(Doc. 2, at 8; Doc. 6–1, at 68.) Although the letter is dated January 4, 2017, it is unclear whether or not it was actually written in 2018, in light of Petitioner's argument that at the time he saw the DHO staff, he had not seen Nurse Brader yet because Petitioner was still housed in the SHU after

---

[1] Regarding this additional evidence, the DHO has stated that the nurse's note does not specifically contradict the medical evidence in the staff email and the inmate's affidavit would not have affected her decision. (Doc. 6–1, at 12.)

being taken there at the time of the incident. (Doc. 7, at 2.)

Despite this additional evidence, the Court finds that the DHO's decision is supported by some evidence. *See Noreiga v. Schultz*, No. 10-4805(RBK), 2011 WL 1870374, at *3 (D. N.J. May 12, 2011) (finding some evidence based on the inmate's admission that he failed to provide a urine sample within two hours, despite an alleged medical condition that was not evidenced at the time of the incident); *see Perez v. Martin*, No. 1:09-cv-845, 2012 WL 2375299, at *2 (E.D. Tex. May 10, 2012) (report and recommendation) (finding that at the time of the disciplinary hearing there was no evidence that petitioner suffered from shy bladder or had a history of being unable to provide urine samples, and in light of the evidence presented at the hearing, it was reasonable for the DHO to conclude that petitioner refused to provide the sample) (adopted 2012 WL 2374989 (E.D. Tex. Jun. 21, 2012); *Julick*, 2017 WL 5485453, at *2 ("Although Julick alleges that the DHO failed to properly account for his medical situation, the record does not reflect that Julick ever made clear to the DHO the particulars of his condition."); *Resendez v. Washington-Adduci*, No. 7:15-cv-01340-VEH-JEO, 2017 WL 693334, at *2–3 (N.D. Ala. Jan. 26, 2017) (report and recommendation) (finding that although petitioner mentioned her situation during the collection of the sample, she did not show she had a "documented medical or psychological problem" where doctor's note was dated after the disciplinary hearing and was not in her medical file prior to the incident), *adopted by,* 2017 WL 679852 (N.D. Ala. Feb. 21, 2017); *see Void v. Warden Fort Dix FCI*, 345 F. App'x. 818, 819–21 (3d Cir. Sept.10, 2009) ("although the evidence of willfulness was spare and the penalty rather severe under the circumstances," some evidence supported disciplinary conviction when the inmate did not provide a urine sample within two hours but provided one fifteen minutes later which the officer refused to take; although the inmate was later diagnosed with "prostatic obstruction," this

medical evidence was not available at his hearing).

Petitioner draws a distinction between "failing" and "refusing" to provide a urine sample. It is undisputed that Petitioner never verbally refused to give a urine sample and, in fact, expressed willingness to do so. The BOP regulation, however, creates a rebuttable presumption that failing to give a urine sample within two hours equates to a refusal. *See* 28 C.F.R. § 550.31(a) ("An inmate is presumed to be unwilling if the inmate fails to provide a urine sample within the allotted time period. An inmate may rebut this presumption during the disciplinary process."); *see also Smith v. Director*, No. 9:09cv24, 2010 WL 2267224, at *2 (E.D. Tex. Apr.12, 2010), *adopted by*, 2010 WL 2267241 (E.D. Tex. Jun. 3, 2010) (rejecting petitioner's attempts to draw a distinction between "failing" to provide a specimen and "refusing" to do so); *Resendez,* 2017 WL 693334, at *3 (rejecting petitioner's claim that she had no "malicious intent" in failing to produce a sufficient urine sample and finding that "intent is not the relevant consideration" rather, the only consideration is whether "some evidence" supports the disciplinary conviction). It was up to Petitioner to rebut that presumption by providing an explanation at his disciplinary hearing. Apart from his general informal statement to the reporting staff member and investigating Lieutenant, and his statements to the UDC and DHO concerning his medications, Petitioner presented no additional witnesses or medical evidence to defend his position or to contradict the medical staff's email.

The Court is bound by the "some evidence" standard and finds that the evidence relied upon by the DHO satisfies that standard. Based upon the reporting officer's description of events in the IR, the chain of custody log, and the medical staff email, some evidence supports the decision of the DHO. "Ascertaining whether [the some evidence] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of

witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."[2] *Hill*, 472 U.S. at 455–56; *see Mitchell*, 80 F.3d at 1445. "The decision can be upheld even if the evidence supporting the decision is 'meager.'" *Mitchel*, 80 F.3d at 1445 (citing *Hill*, 472 U.S. at 457).

## IV. Conclusion

Petitioner's allegations fail to raise a due process violation under *Wolff*. The Court finds that Petitioner received adequate due process in his prison disciplinary proceedings, and the decision of the DHO is supported by some evidence.

**IT IS THEREFORE ORDERED BY THE COURT** that the petition for writ of habeas corpus is **denied**.

**IT IS SO ORDERED**.

**Dated in Kansas City, Kansas, on this 13th day of December, 2018.**

> **S/ John W. Lungstrum**
> **JOHN W. LUNGSTRUM**
> **UNITED STATES DISTRICT JUDGE**

---

[2] The Court notes that Respondent submitted a review of Petitioner's UA screenings since January 2018 which do not reflect an inability to provide the required samples. (Doc. 6–2, at 18.) Respondent also submitted the Declaration of Kristine A. Aulepp, D.O., Clinical Director at USPL, stating that "Petitioner's medical conditions and medications would not have precluded his ability to produce a relatively small (two (2) ounce) urine sample, within a two (2) hour time period, especially after having been provided with eight (8) ounces of fluids. (Doc. 6–3, at 4.)